IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| DAVID S., VERONICA S., and S.S., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED HEALTHCARE INSURANCE COMPANY, <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER** <br><br> Case No. 2:18-cv-803 <br><br> Chief Judge Robert J. Shelby <br><br> Magistrate Judge Evelyn J. Furse |

This case stems from Plaintiff S.S.'s mental health, behavioral, and substance abuse treatment at two facilities located in Utah. S.S. and his parents, co-Plaintiffs David S. and Veronica S., claim Defendant United Healthcare Insurance Company owes them for the costs of S.S.'s treatments. Plaintiffs seek relief under the Employee Retirement Income Security Act and the Mental Health Parity and Addiction Equity Act.[1] United moves to dismiss on the grounds that Plaintiffs are members of a class action predating this suit, Plaintiffs fail to state a claim upon which relief can be granted, and Plaintiffs David S. and Veronica S. lack standing.[2] For the reasons given, United's Motion to Dismiss is GRANTED IN PART.

---

[1] Dkt. 2 (Complaint) ¶¶ 59–71.

[2] Dkt. 5 at 1–2, 8–23.

1

## BACKGROUND

Over the course of several months in 2015 and 2016, S.S. attended two treatment facilities in Utah: Open Sky Wilderness Therapy and Catalyst Residential Treatment Center.[3] Based on the recommendation of his treating medical professionals, S.S. was first admitted to Open Sky on July 15, 2015, for mental health and substance abuse treatment.[4] S.S. received treatment at Open Sky until his discharge on September 29, 2015.[5] In S.S.'s discharge summary, Open Sky recommended that S.S. "attend a residential treatment center to support continued growth and success."[6] On September 30, 2015, one day after his discharge from Open Sky, S.S. was admitted to Catalyst.[7] S.S. remained at Catalyst until his discharge on October 31, 2016.[8] S.S. relapsed and began a second stay at Catalyst on December 30, 2016, which lasted until his discharge on February 28, 2017.[9]

David S. is a participant in United's "fully-insured employee welfare benefits plan under [ERISA]."[10] S.S. is a beneficiary of David S.'s insurance plan (the Plan).[11] When United denied coverage for S.S's treatment at Open Sky, David S. and Veronica S. filed a complaint with the

---

[3] Dkt. 2 (Complaint) ¶¶ 4, 15, 32, 46.

[4] *Id.* ¶¶ 15.

[5] *Id.* ¶ 30.

[6] *Id.*

[7] *Id.* ¶ 31.

[8] *Id.* ¶ 45.

[9] *Id.* ¶¶ 46, 48–49.

[10] *Id.* ¶ 3.

[11] *Id.* ¶¶ 1–3.

Texas Department of Insurance.[12] The Texas Department of Insurance directed Plaintiffs to appeal to United, which they did.[13] United did not process the appeal.[14]

On October 12, 2015, United informed David S. and Veronica S. that it was also denying coverage for a substantial portion of S.S.'s first treatment at Catalyst.[15] David S. and Veronica S. appealed, and United upheld its denial of S.S.'s first treatment at Catalyst from October 10, 2015 to October 31, 2016.[16] David S. and Veronica S. appealed United's denial of coverage to an external review agency, which also upheld the denial.[17] On April 10, 2017, United also denied coverage for S.S.'s second stay at Catalyst.[18] David S. and Veronica S. appealed this denial, which United upheld.[19]

Plaintiffs initiated this action against United on October 12, 2018, asserting two causes of action: (1) Claim for Recovery of Benefits Under 29 U.S.C. § 1132(a)(1)(B), and (2) Claim for Violation of [the Parity Act] Under 29 U.S.C. § 1132(a)(3).[20] In response, United moved to dismiss, asserting three separate grounds for dismissal.[21] The court now takes up United's Motion to Dismiss.

---

[12] *Id.* ¶¶ 16–20.
[13] *Id.* ¶¶ 19–20.
[14] *Id.* ¶ 27.
[15] *Id.* ¶ 32.
[16] *Id.* ¶¶ 33–36.
[17] *Id.* ¶¶ 37–44.
[18] *Id.* ¶ 47.
[19] *Id.* ¶¶ 48–51.
[20] *Id.* ¶¶ 59–71.
[21] Dkt. 5 at 1–3.

**LEGAL STANDARD**

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Under Rule 12(b)(6), a court must dismiss causes of action that "fail[] to state a claim upon which relief can be granted."[22]

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[23] A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[24] When evaluating a motion to dismiss, the court "accept[s] all well-pleaded facts [in the complaint] as true and view[s] them in the light most favorable to the plaintiff."[25] However, the court will not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."[26] The reviewing court is required to "draw on its judicial experience and common sense" to evaluate whether the well-pled facts state a plausible claim for relief.[27] "Though a complaint need not provide detailed factual allegations, it must give just enough factual detail to provide [defendants] fair notice of what the . . . claim is and the grounds upon which it rests."[28]

---

[22] Fed. R. Civ. P. 12(b)(6).

[23] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation and citation omitted).

[24] *Id.*

[25] *Jordan-Arapahoe, LLP v. Bd. of Cnty. Comm'rs*, 633 F.3d 1022, 1025 (10th Cir. 2011) (citation omitted).

[26] *Iqbal*, 556 U.S. at 678.

[27] *Id.* at 679.

[28] *Warnick v. Cooley*, 895 F.3d 746, 751 (10th Cir. 2018) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (quotations omitted).

## ANALYSIS

### I. United Healthcare's Motion to Dismiss is GRANTED IN PART.

United raises three arguments in support of its Motion to Dismiss.[29] First, United urges the court to dismiss on the grounds that Plaintiffs are members of a prior-filed class action with identical claims. Second, United argues Plaintiffs inadequately pled their Parity Act claim. Third, United contends Plaintiffs David S. and Veronica S. lack statutory and constitutional standing to assert the ERISA and Parity Act claims. The court will address each argument, in turn.

#### a. The First-to-File Rule.

United seeks dismissal on the grounds that Plaintiffs "are members of one or more certified plaintiff classes in a pending class action premised on the same grounds as this action."[30] In essence, United seeks dismissal pursuant to the first-to-file rule. Under the first-to-file rule, "the first federal district court which obtains jurisdiction of parties and issues should have priority and the second court should decline consideration of the action until the proceedings before the first court are terminated."[31] Intended to "prevent inconsistent rulings and to preserve judicial resources,"[32] the first-to-file rule applies "when two district courts have jurisdiction over the same controversy."[33] When determining whether the first-to-file rule applies, courts consider three factors: "(1) the chronology of events, (2) the similarity of the

---

[29] Dkt. 5 at 1–3.

[30] *Id.* at 1.

[31] *O'Hare Int'l Bank v. Lambert*, 459 F.2d 328, 331 (10th Cir. 1972) (citation omitted).

[32] *Aurora Bank, FSB v. Universal Am. Mortg. Co.*, No. 12-CV-02067-CMA-MJW, 2012 WL 5878197, at *2 (D. Colo. Nov. 19, 2012) (citation omitted); *see also Swift Distribution, LLC v. Starin Mktg., Inc.*, No. 16-CV-00893-MSK-STV, 2016 WL 9344072, at *2 (D. Colo. Nov. 4, 2016) ("The purpose of the principle is to conserve judicial resources and avoid conflicting rulings.").

[33] *Lipari v. U.S. Bancorp NA*, 345 F. App'x 315, 317 (10th Cir. 2009) (explaining the rule "does not pertain to distinct controversies arising seriatim.").

parties involved, and (3) the similarity of the issues or claims at stake."[34] "[T]hese factors are not exhaustive, and other equitable factors may bear on the inquiry."[35] If the court determines a complaint raises "the same issues against the same parties [as a complaint] in another district court," it may decline jurisdiction.[36]

Although it is clear the class actions United identifies were filed before this suit,[37] it is not clear that the parties or issues in those actions are the same as the parties and issues here. For example, United fails to demonstrate that the class actions include David S., Veronica S., and S.S. In a footnote, United provides the "operative class definitions" for the two pending class actions.[38] But, United offers the court no analysis of the class definitions, no comparison of those definitions to the Plaintiffs in this case, and no explanation as to whether the defendant in the class actions—United Behavioral Health[39]—is the same entity as United for purposes of the first-to-file rule. Further, United provides the court with no analysis of the ERISA claims each class action allows, whether Plaintiffs' ERISA claim is encompassed by the class actions, and whether the class actions include Parity Act claims. In short, United has failed to establish the first-to-file rule applies at this stage. United's Motion to Dismiss Plaintiffs' suit on the grounds that it is barred by the first-to-file rule is DENIED.

---

[34] *Wakaya Perfection, LLC v. Youngevity Int'l, Inc.*, 910 F.3d 1118, 1124 (10th Cir. 2018) (citation omitted).

[35] *Id.* (citation omitted).

[36] *Buzas Baseball, Inc. v. Bd. of Regents of Univ. Sys. of Georgia*, 189 F.3d 477, 1999 WL 682883, *2 (10th Cir. 1999).

[37] The class actions United identifies predate this suit: *Wit v. United Behavioral Health*, Case No. 14-cv-2346 (N.D. Cal. May 21, 2014); and *Alexander v. United Behavioral Health,* Case No. 14-cv-5337 (N.D. Cal. Dec. 4, 2014). *See* Dkt. 5 at 8.

[38] Dkt. 5 at 8–9, n.5.

[39] *See* Dkt. 2 (Complaint) ¶ 5.

### b. The Parity Act.

United moves to dismiss Plaintiffs' claim for relief under the Mental Health Parity and Addiction Equity Act (the Parity Act) on the grounds that it is inadequately pled.[40] The Parity Act was passed to prevent insurance providers' disparate treatment of "mental health and substance use disorders as compared to . . . medical and surgical conditions."[41] In effect, the Parity Act prevents insurance providers from writing or enforcing group health plans in a way that treats mental and medical health claims differently.[42]

The Parity Act allows insurance providers to evaluate mental and medical health claims with "treatment limitations."[43] "Treatment limitations include both quantitative treatment limitations, which are expressed numerically (such as 50 outpatient visits per year), and nonquantitative treatment limitations, which otherwise limit the scope or duration of benefits for treatment under a plan or coverage."[44] An insurance provider violates the Parity Act by using a nonquantitative limitation for mental health treatment that is more restrictive than the

---

[40] Dkt. 5 at 1, 13–20.

[41] *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 356 (2d Cir. 2016) (citation omitted).

[42] *See* 29 U.S.C. § 1185a(a)(3)(A) (requiring group health plans that include "medical and surgical benefits and mental health or substance use disorder benefits" to include "treatment limitations applicable to such mental health or substance use disorder benefits [that] are no more restrictive than . . . treatment limitations applied to substantially all medical and surgical benefits covered by the plan (or coverage) and there are no separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits.");
29 C.F.R. § 2590.712(c)(4)(i) ("A group health plan (or health insurance coverage) may not impose a nonquantitative treatment limitation with respect to mental health or substance use disorder benefits in any classification unless, under the terms of the plan (or health insurance coverage) *as written and in operation*, any processes, strategies, evidentiary standards, or other factors used in applying the nonquantitative treatment limitation to mental health or substance use disorder benefits in the classification *are comparable to, and are applied no more stringently than*, the processes, strategies, evidentiary standards, or other factors used in applying the limitation with respect to medical/surgical benefits in the classification.") (emphasis added); s*ee also Munnelly v. Fordham Univ. Faculty,* 316 F. Supp. 3d 714, 728 (S.D.N.Y. 2018) ("Essentially, the Parity Act requires ERISA plans to treat sicknesses of the mind in the same way that they would a broken bone.") (quotation marks and citation omitted).

[43] *See* 29 U.S.C. §§ 1185a(a)(3)(A)(ii)–(B)(iii) (defining "treatment limitations" and prohibiting insurance providers from applying "treatment limitations" unequally to mental and physical health treatments).

[44] 29 C.F.R. § 2590.712(a); s*ee also Kerry W. v. Anthem Blue Cross & Blue Shield*, No. 2:19CV67, 2019 WL 2393802, at *2 (D. Utah June 6, 2019).

nonquantitative limitation applied to medical health treatments.[45] Providers can therefore commit Parity Act violations two ways: facially, by writing an offending treatment limitation into the plan; and in application, by applying an offending treatment limitation to deny coverage.[46]

To succeed on their Parity Act claim, Plaintiffs must show: "(1) the relevant group health plan is subject to the Parity Act; (2) the plan provides both medical/surgical benefits and mental health or substance use disorder benefits; (3) the plan includes a treatment limitation for mental health or substance use disorder benefits that is more restrictive than medical/surgical benefits; and (4) the mental health or substance use disorder benefit being limited is in the same classification as the medical/surgical benefit to which it is being compared."[47] While the first two elements of this four-part test are relatively easy to plead, the third and fourth elements present a more substantial pleading challenge for some parties. That is why some courts have attempted to distill this four-part test into the following two-part test: "To survive the dismissal of a Parity Act claim, a plaintiff must allege a medical or surgical analogue that the plan treats

---

[45] *See supra* note 42. *See also Joseph F. v. Sinclair Servs. Co.*, 158 F. Supp. 3d 1239, 1262 (D. Utah 2016) ("The court concludes that the Plus Plan's residential treatment exclusion violates the Parity Act because the exclusion is a separate treatment limitation that is applicable only with respect to mental health benefits.") (brackets, ellipses, and citation omitted).

[46] *See* 29 U.S.C. § 1185a(a)(3)(A)(ii) ("the treatment limitations applicable to . . . mental health or substance abuse disorder benefits [cannot be] more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan," and "separate treatment limitations [cannot be] applicable only with respect to mental health or substance use disorder benefits."); 29 C.F.R. § 2590.712(c)(4)(i) (prohibiting the use of "a nonquantitative treatment limitation with respect to mental health or substance use disorder benefits . . . *unless, under the terms of the plan (or health insurance coverage) as written and in operation*, any processes, strategies, evidentiary standards, or other factors . . . are comparable to, and *are applied no more stringently* than, the processes, strategies, evidentiary standards, or other *factors used in applying the limitation* with respect to medical/surgical benefits in the classification.") (emphasis added); *see also Peter E. v. United Healthcare Servs., Inc.*, No. 2:17-CV-00435-DN, 2019 WL 3253787, at *3 (D. Utah July 19, 2019) (explaining disparate treatment limitations that violate the Parity Act can be either *facial* (as written in the language or the processes of the plan) or *as-applied* (in operation via application of the plan)").

[47] *Michael D. v. Anthem Health Plans of Kentucky, Inc.*, 369 F. Supp. 3d 1159, 1174 (D. Utah 2019) (citing *A.H. by & through G.H. v. Microsoft Corp. Welfare Plan*, No. C17-1889-JCC, 2018 WL 2684387, at *6 (W.D. Wash. June 5, 2018) (citations omitted)); *Gallagher v. Empire HealthChoice Assurance, Inc.*, 339 F. Supp. 3d 248, 256 (S.D.N.Y. 2018) (citation omitted).

differently than the disputed mental health or substance abuse services."[48] Plaintiffs' allegations satisfy both tests.

United does not dispute that the Plan is subject to the Parity Act.[49] Nor does United dispute that the Plan provides both mental health and medical benefits.[50] Instead, United contends Plaintiffs failed to adequately plead that United applied a treatment limitation to S.S.'s mental health claims in a way that was more restrictive than treatment limitations used on analogous medical treatments.[51] The court disagrees.

Although Plaintiffs fail to plead a plausible *facial* challenge to the Plan,[52] they allege just enough for the court to infer United *applied* the Plan in a way that violates the Parity Act.[53] First, Plaintiffs adequately allege S.S.'s residential mental health treatment at Open Sky and Catalyst is analogous to medical health treatment at a skilled nursing facility.[54] This allegation identifies the medical analogue that the Plan treats differently than the disputed mental health treatments: skilled nursing facilities.[55] Second, Plaintiffs allege United applied *acute*

---

[48] *Timothy D. v. Aetna Health & Life Ins. Co.*, No. 2:18CV753DAK, 2019 WL 2493449, at *3 (D. Utah June 14, 2019) (citing *Welp v. Cigna Health & Life Ins. Co.*, Slip Copy, 2017 WL 3263138, at *5 (S.D. Fla. July 20, 2017)); *Roy C. v. Aetna Life Ins. Co.*, No. 2:17CV1216, 2018 WL 4511972, at *3 (D. Utah Sept. 20, 2018).

[49] Dkt. 5 at 13.

[50] *Id.*

[51] *Id.* at 14–20.

[52] Neither party provides the court with a copy of the 2015 Plan, which governs S.S.'s benefits concerning treatment at Open Sky and part of S.S.'s treatment during his first stay at Catalyst. United offers a copy of the 2016 Plan, which governs S.S.'s benefits concerning treatment for his second stay at Catalyst.

[53] *See Peter E.*, No. 2:17-CV-00435-DN, 2019 WL 3253787, at *3 (explaining disparate treatment limitations that violate the Parity Act can be either *facial* (as written in the language or the processes of the plan) or *as-applied* (in operation via application of the plan)").

[54] Dkt. 2 (Complaint) ¶¶ 56, 67.

[55] *See Timothy D.*, No. 2:18CV753DAK, 2019 WL 2493449, at *4 ("Plaintiffs' allegations that skilled nursing facilities, inpatient hospice care, and rehabilitation facilities are analogous to levels of care for which Aetna excluded benefits to M.D. for mental health treatment are sufficient."); *B.D. v. Blue Cross Blue Shield of Georgia*, No. 1:16-CV-00099-DN, 2018 WL 671213, at *10 (D. Utah Jan. 31, 2018) ("Additionally, a skilled nursing facility is analogous to a residential treatment facility and this was known prior to the Final Rules being issued."); *Joseph F.*, 158 F. Supp. 3d at 1261 ("So, if the Plus Plan is going to cover treatment received at a skilled nursing facility, which

nonquantitative treatment limitations to evaluate S.S.'s mental health treatment at Open Sky and Catalyst, but United applies *sub-acute* nonquantitative treatment limitations to evaluate treatments at skilled nursing facilities.[56] These allegations identify "acute nonquantitative treatment limitations" as the offending treatment limitations that United *applied* to determine that S.S's mental health treatments were not "medically necessary." Finally, Plaintiffs allege United violated the Parity Act by applying nonquantitative treatment limitations to S.S.'s mental health treatments that are more stringent than treatment limitations applied to medical health treatments.[57] This as-applied challenge asserts that United handled mental health and medical health treatments unequally. Given the factual allegations in Plaintiffs' Complaint, it is plausible that United's acute nonquantitative treatment limitations are more stringent than United's sub-acute nonquantitative treatment limitations. Plaintiffs have therefore adequately alleged that United treated mental and medical health services differently. United's Motion to Dismiss Plaintiffs' Parity Act claim is therefore DENIED.

   c. **Standing.**

United moves to dismiss David S. and Veronica S. on the grounds that they lack "statutory" and constitutional standing.[58] As an initial matter, it is important to clarify that "questions of so-called 'statutory standing' like the one presented in this case . . . are not jurisdictional."[59] Instead, the question "is whether the constitutional or statutory provision . . .

---

provides only medical and surgical treatment, then the Act requires that it also cover treatment received at a residential treatment facility, which provides only mental health and substance use disorder treatment.").

[56] Dkt. 2 (Complaint) ¶¶ 37, 53–56, 68.

[57] *See id.* ¶¶ 53–57, 68–69.

[58] Dkt. 5 at 21–22.

[59] *Niemi v. Lasshofer*, 770 F.3d 1331, 1345 (10th Cir. 2014) (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014) (explaining that the "statutory standing" label is "misleading, since the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction") (citation omitted)); *see also Am. Humanist Ass'n, Inc. v. Douglas Cty. Sch. Dist. RE-1*, 859 F.3d 1243, 1260 (10th Cir. 2017) (explaining

grant[s] persons in the [Plaintiffs'] position a right to judicial relief."[60]  In answering this question, the court presumes that the statute in question grants Plaintiffs a right to judicial relief if their interests "fall within the zone of interests protected by the law invoked."[61]

Under 29 U.S.C. § 1132(a)(1), a "participant" can bring civil actions "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."[62]  Plaintiffs do not allege Veronica S. is a participant, beneficiary, or fiduciary of the Plan,[63] so she is dismissed.[64]  In contrast, Plaintiffs do allege David S. is a "participant" in the Plan.[65]  Plaintiffs further allege David S. and Veronica S. incurred over $179,000 in medical expenses that should have been covered by the Plan.[66]  As a Plan participant, David S. "has standing to bring a civil action to enforce his rights under the terms of an ERISA plan or to enforce ERISA's provisions."[67]  That is

---

the zone of interest test, "which is sometimes called 'statutory standing' or treated as part of 'prudential standing' considerations, does not implicate Article III standing."). *Cf. Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514–16 (2006) (explaining "when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character."). *But see Hansen v. Harper Excavating, Inc.*, 641 F.3d 1216, 1222–23 (10th Cir. 2011) ("the subject-matter jurisdiction of the district court depends on whether Hansen would have had standing to bring his suit under § 502(a) of ERISA.").

[60] *The Wilderness Soc. v. Kane Cty., Utah*, 632 F.3d 1162, 1169 (10th Cir. 2011) (en banc) (citing *Warth v. Seldin*, 422 U.S. 490, 500 (1975)); *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016) ("The Supreme Court has recently clarified, however, that what has been called 'statutory standing' in fact is not a standing issue, but simply a question of whether the particular plaintiff has a cause of action under the statute.") (quotation and citation omitted).

[61] *Bank of Am. Corp. v. City of Miami, Fla.*, 137 S. Ct. 1296, 1302 (2017) (citing *Lexmark Int'l*, 572 U.S. at 129).

[62] *See Chastain v. AT & T*, 558 F.3d 1177, 1181 (10th Cir. 2009) (citing 29 U.S.C. § 1132(a)); *see also* 29 U.S.C. § 1132(a)(3) (permitting a participant, beneficiary, or fiduciary to bring suit "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or terms of the plan.").

[63] *See* Dkt. 2 (Complaint).

[64] *See* 29 U.S.C. § 1132(a)(1) ("A civil action may be brought . . . by a participant or beneficiary"); *see also Anne M. v. United Behavioral Health*, No. 2:18-CV-808 TS, 2019 WL 1989644, at *4 (D. Utah May 6, 2019) (dismissing a plaintiff because "there are no allegations that [he was] a plan participant, beneficiary, or fiduciary.")

[65] *See* Dkt. 2 (Complaint) ¶ 3.

[66] *Id.* ¶ 58.

[67] *Alexander v. Anheuser-Busch Companies, Inc.*, 990 F.2d 536, 538 (10th Cir. 1993) (citing *Raymond v. Mobil Oil Corp.*, 983 F.2d 1528, 1532 (10th Cir. 1993)).

exactly why David S. brought this suit.[68] Accordingly, Plaintiffs have sufficiently alleged that David S. has a right to sue for benefits owed under the Plan, and to enforce ERISA's provisions.[69]

David S. also has constitutional standing. "To satisfy the Constitution's restriction of this Court's jurisdiction to 'Cases' and 'Controversies,' Art. III, § 2, a plaintiff must demonstrate constitutional standing."[70] David S. has done this by adequately pleading he suffered an "injury in fact that is fairly traceable to [United's] conduct and that is likely to be redressed by a favorable judicial decision."[71] David S. alleges he and his wife incurred over $179,000 in medical expenses because United denied benefits owed to them under the Plan.[72] And under 29 U.S.C. § 1132(a), a favorable decision of this court could redress David S.'s alleged injuries. David S. therefore has constitutional standing.[73]

---

[68] *See* Dkt. 2 (Complaint) ¶ 8 (The remedies that Plaintiffs seek under the terms of ERISA and under the Plan are for the benefits due and pursuant to 29 U.S.C. § 1132(a)(1)(B), for appropriate equitable relief under 29 U.S.C. § 1132(a)(3) based on the Defendant's violation of the [Parity Act]").

[69] *See also Peter E.*, No. 2:17-CV-00435-DN, 2019 WL 3253787, at *2–3 (concluding Plaintiffs "sufficiently alleged Peter E's standing under ERISA" by alleging he "is a participant of the Plan," and alleging he "paid in excess of $60,000 in out-of-pocket expenses as a result of Defendants [sic] denial of coverage for Eric E.'s treatment at Vista, and that he is due reimbursement under the terms of the Plan"); *Anne M.*, No. 2:18-CV-808 TS, 2019 WL 1989644, at *4 (concluding that Anne, a plan participant, had statutory standing to pursue claims under ERISA where Anne paid for the beneficiary's treatment and sought "reimbursement for the money [] expended, contending that these expenses should have been paid by the Plan.").

[70] *Bank of Am. Corp.*, 137 S. Ct. at 1302.

[71] *Id.* (citing *Spokeo, Inc. v. Robins,* 136 S.Ct. 1540, 1547 (2016)).

[72] Dkt. 2 (Complaint) ¶ 58.

[73] *See Peter E.*, No. 2:17-CV-00435-DN, 2019 WL 3253787, at *3 ("These allegations are sufficient to show Peter E. suffered an injury-in-fact (out-of-pocket expenses) that is causally connected to Defendants' conduct (improper denial of coverage) and redressable if he prevails on his claims."); *Willis v. Regence Bluecross Blueshield of Utah*, No. 2:07-CV-616 BSJ, 2008 WL 4693581, at *8–9 (D. Utah Oct. 23, 2008) (holding that plan participant father had constitutional standing to bring claim to recover funds he paid for expenses incurred by his daughter).

## CONCLUSION

For the foregoing reasons, United's Motion to Dismiss is GRANTED IN PART.[74] Plaintiff Veronica S. is dismissed from the case. In all other respects, United's Motion is DENIED.

SO ORDERED this 13th day of September, 2019.

BY THE COURT:

_____
ROBERT J. SHELBY
United States Chief District Judge

---

[74] Dkt. 5.